United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR SHARRIEFF GAY,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW CATE, Director; A. HEDGEPETH, Warden; J. WALKER; Chief Health Program Manager; K. WALL, Health Care Manager; M. SEPULVEDA, Chief Medical Officer; DR. D. JARDINI;<br><br>Defendants.<br>_____/ | No. C 10-1314 WHA (PR)<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING MOTIONS TO COMPEL, FOR IMMEDIATE INJUNCTIVE RELIEF, AND TO AUTHENTICATE DOCUMENTS; GRANTING EXTENSIONS OF TIME; INSTRUCTING PLAINTIFF TO SERVE OR PROVIDE CORRECT LOCATION OF UNSERVED DEFENDANTS; SCHEDULING MOTION FOR SUMMARY JUDGMENT<br><br>(Docket Nos. 31, 33, 37, 38, 41, 51) |

**INTRODUCTION**

Plaintiff, a California prisoner currently incarcerated at California State Prison, Solano, filed this pro se civil rights action under 42 U.S.C. 1983 about the conditions of his confinement at his prior prison, Salinas Valley State Prison ("SVSP"). Following a review of plaintiff's amended complaint, it was served upon defendants. Defendants Matthew Cate, the Director of the California Department of Corrections and Rehabilitation; A. Hedgepeth, the SVSP Warden; M. Sepulveda, the Chief Medical Officer at SVSP; and J. Walker and K, Wall, all SVSP health care employees, have moved to dismiss the amended complaint on the grounds that it fails to

state a cognizable claim for relief and that certain claims have not been exhausted.[1] For the reasons discussed below, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

In his amended complaint, plaintiff alleges that he has been suffering from back spasms in his lower back that lead to incontinence. The episodes of incontinence occur when he is sleeping and when he assumes a "prone out" position, which is required when a security alarm is sounded in the prison. He filed an inmate grievance on October 1, 2008, describing his condition, and complaining that his incontinence created a hazardous condition in the cell, that he had only been seen by nurses and not a doctor, and that he had to wash his soiled sheets and underwear by hand in his cell (Amend Compl. Ex. A). He requested medical treatment and "chronos" (or authorization) for hazardous waste bags, single cell status, and special laundry privileges (*ibid.*). In response, he was seen by Dr. Bridgne on October 8 and prescribed pain medication for his back; labs were ordered, he was referred for physical therapy, and he was scheduled for a follow-up appointment in 90 days (*id.* Ex. B). On October 14, his back was x-rayed, and on October 23, Dr. Muhammad examined him and gave him exercise instructions after the x-rays showed no bone injuries or fractures (*id.* Exs. C, D).

Plaintiff appealed his grievance to the first formal level and in response he was examined again by both Dr. Bridgne and Dr. Muhammad on January 14, 2009 (*id.* Ex. A). Plaintiff alleges that the doctors said that his medical condition warrants single-cell placement but that "custody staff will not allow medical staff to make those calls"; however, the nurse responding to his first level of review stated that he had been referred for examination by two doctors and it had been determined that his medical condition did not require single-cell status or hazardous material bags (*id.* 6-7 & Ex. A). He was given more underwear, bed sheets, and laundry privileges (*id.* Ex. A). On February 18, he received an M.R.I. (*id.* 7).

On March 11, 2009, plaintiff appealed his grievance to the second level of review, describing his condition and requesting single-cell status (*id.* Ex. A). Defendant Wall noted the

---

[1]The Marshal could not serve defendant Dr. D. Jardini at SVSP because noone by such a name works there.

2

United States District Court
For the Northern District of California

increased laundry, bedsheets and underwear, the M.R.I. and x-ray, and the doctor examinations that plaintiff received, and found that hazardous materials bags and single-cell status were not medically necessary (*ibid.*). Plaintiff appealed the grievance to the final level of administrative review, the "Director's level," again requesting single-cell status due to his incontinence (*ibid.*). Defendant J. Walker denied the grievance on November 12, 2009, finding that: (1) plaintiff was not "gravely disabled" within the meaning of the prison regulations, which define "gravely disabled" as involving a "mental disorder" preventing the inmate from using "the elements of life that are essential to health and safety;" (2) that no medical professional had found that single-cell status was medically required; and (3) that plaintiff did not qualify for the prison's "Disability Placement Program," which did not necessarily mandate single (*ibid.*). Walker denied plaintiff's request for single-cell status, but noted the medical care and other items that had been provided to plaintiff (*ibid.*).

## ANALYSIS

In his amended complaint, plaintiff claims that by denying his request for single-cell status, defendants violated three of his constitutional rights: (1) his Eighth Amendment rights to adequate medical care; (2) his Eighth Amendment rights and protection from other inmates; and (3) his rights to equal protection under the Fourteenth Amendment. Defendants argue that the claims are not cognizable, are not exhausted, and that they are entitled to qualified immunity.

### A. STANDARD OF REVIEW

#### 1. Failure to State a Claim

Failure to state a claim is a grounds for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dismissal for failure to state a claim is a ruling on a question of law. *Parks School of Business, Inc., v. Symington*, 51 F.3d 1480, 1483 (9th Cir. 1995). "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

Review is limited to the contents of the complaint, *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994), including documents physically attached to the complaint or documents the complaint necessarily relies on and whose authenticity is not contested. *Lee v.*

*County of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). In addition, the court may take judicial notice of facts that are not subject to reasonable dispute. *Id.* at 688 (discussing Fed. R. Evid. 201(b)). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Ibid.*

A *pro se* pleading must be liberally construed, and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Twombly*, 550 U.S. at 570 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. *Symington*, 51 F.3d at 1484.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotations omitted). Although in order to state a claim a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted). A motion to dismiss should be granted if the complaint does not proffer "enough facts to state a claim for relief that is plausible on its face." *Id.* at 1986-87; *see, e.g., Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1952 (2009).

To state a claim under 42 U.S.C. 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

2.  <u>Exhaustion</u>

4

Nonexhaustion under § 1997e(a) is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints. *Id.* at 215-17.

A nonexhaustion claim should be raised in an unenumerated Rule 12(b) motion rather than in a motion for summary judgment. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding such a motion – a motion to dismiss for failure to exhaust nonjudicial remedies – the court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. If the court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal without prejudice. *Id.* at 1120.

Section 1997e of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Compliance with the exhaustion requirement is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 739-40 & n.5 (2001). Moreover, an action must be dismissed unless the prisoner exhausted his available administrative remedies *before* he or she filed suit, even if the prisoner fully exhausts while the suit is pending. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002). But a prisoner satisfies the exhaustion requirement as long as he exhausted his administrative remedies prior to filing an amended complaint, even if the amended complaint raises new claims which arose after the original complaint was filed. *Rhodes v. Robinson*, 621 F.3d 1002, 1006 (9th Cir. 2010).

The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4)

5

1 third level appeal to the Director of the California Department of Corrections. *Id.* § 3084.5;
2 *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). This satisfies the administrative
3 remedies exhaustion requirement under § 1997e(a). *Id.* at 1237-38.

**B.     ANALYSIS**

      1.     Supervisor Defendants

Defendants argue that the amended complaint fails to state a cognizable claim for relief against the three supervisor defendants – Matthew Cate, the Director of the California Department of Corrections and Rehabilitation; A. Hedgepeth, the SVSP Warden; and M. Sepulveda, the Chief Medical Officer at SVSP because there is no allegation that they participated in denying plaintiff's requests for single-cell status.

Liability may be imposed on an individual defendant under 42 U.S.C. 1983 only if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). At the pleading stage, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Plaintiff's factual allegations do describe any actions taken by Cate, Sepulveda or Hedgpeth, let alone any actions that proximately caused plaintiff's requests for single-cell status to be rejected. The attachments do not indicate that any of these defendants participated in his medical care or in his administrative grievances. Rather, these defendants appear to have been included solely on the theory that they are responsible for the actions of their subordinates, i.e. the other defendants, simply by virtue of the fact that they are supervisors or superiors. Such a theory of liability is not cognizable for claims under Section 1983. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (under no circumstances is there respondeat superior liability under Section 1983); *accord Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) (same). Consequently, Cate, Sepulveda and  cannot be liable for the conduct of the other defendants simply by virtue of the fact that they are their superiors. And, as the amended complaint and attachments do not allege any conduct by them that proximately caused his requests for single-cell status to be denied, plaintiff has failed to state a cognizable claim against these defendants.

6

In his opposition, plaintiff argues that the supervisor defendants were involved in the violation of his rights because he sent each of them a "request for interview" which he stated that he was putting them "on formal notice" that he was afraid for his safety at the hands of his cellmates and requested an investigation (Opp. 5, Ex. B). Plaintiff did not send these requests for interview until November 2011, two months *after* he filed the amended complaint (*ibid.*). As such, these requests did not put the supervisor defendants on notice of his problems, nor can they be faulted for failing to address them, at the time his amended complaint was filed.

Nor can Plaintiff amend his complaint now to include claims based on these requests for interviews. Leave to amend a complaint is generally granted. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (district courts must afford pro se prisoner litigants an opportunity to amend to correct any deficiency in their complaints). However, plaintiff amending his complaint to add his claims against the supervisor defendants would be an exercise in futility because such claims have not been exhausted. "Dismissal of a *pro se* complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007) (citations and internal quotation marks omitted). The grievance that plaintiff pursued regarding single cell status does not address the supervisor defendants' failure to respond to his notices of his safety concerns, nor could it as it predates such notices. Nor would a grievance filed at this time satisfy the exhaustion requirement because plaintiff must complete his administrative grievances *before* he files suit in federal court. *See McKinney*, 311 F.3d at 1199; *Rhodes*, 621 F.3d at 1006.

It is clear from the allegations in the amended complaint and in the opposition to defendants' motion that the supervisor defendants were not involved in the alleged violation of his rights until, at the earliest, after the amended complaint was filed. Leave to amend to add such claims cannot be added because such claims have not been exhausted. Accordingly, the claims against the supervisor defendants Cate, Sepulveda and Hedgpeth will be dismissed without prejudice to plaintiff bringing claims against them in a new action after they have been properly exhausted.

7

2. <u>Defendants Wall and Walker</u>

a. <u>Exhaustion</u>

Defendants argue that plaintiff's claims against defendants Wall and Walker are not exhausted. Plaintiff claims that these defendants denied the administrative grievance at the second and third (Director's) level of review, respectively, in which plaintiff requested single-cell status based on his medical condition. Defendants do not contest that plaintiff completed all available administrative procedures for this grievance (Amend. Compl. Ex. A). Rather, they argue that this grievance did not properly exhaust his claims that the denial of his single cell status violated his Eighth Amendment rights to adequate medical care and protection from danger at the hands of other inmates, and his right to Equal Protection.

Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). It is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Id.* at 218. In California, the regulation requires the prisoner "to lodge his administrative complaint on CDC form 602 and 'to describe the problem and action requested.'" *Morton*, 599 F.3d at 946 (quoting Cal. Code Regs. tit. 15 § 3084.2(a)). "[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (citation and internal quotation omitted). The grievance need not include legal terminology or legal theories unless they are needed to provide notice of the harm being grieved. *Ibid.* Nor must a grievance include every fact necessary to prove each element of an eventual legal claim. *Ibid.* The purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. *Ibid.* The grievance should include sufficient information "to allow prison officials to take appropriate responsive measures." *Ibid.* (citation and internal quotation omitted).

The grievance did not exhaust plaintiff's claim that prison officials failed to protect him from other inmates. The grievance did not mention at any time that plaintiff had been threatened or attacked by his cellmate or any other inmate, or that he was at risk of such attack, either because of his incontinence or for any other reason. Consequently, prison officials did

8

not have the opportunity to make a determination that plaintiff's personal safety was jeopardized by his medical condition, and to remedy the problem either with single-cell housing or other protective measures. As such, the grievance did not "alert" officials to his safety issues, and therefore did not properly exhaust his claim under the Eighth Amendment that defendants failed to protect him from the threat of harm from other inmates, and the claim will be dismissed without prejudice to refiling in a new action once it has been exhausted. *See, e.g., ibid.* (no exhaustion where grievance complaining of upper bunk assignment failed to allege, as the complaint had, that nurse had ordered lower bunk but officials disregarded that order); *Morton*, 599 F.3d at 946 (grievance that complained of visitation restrictions, and did not mention an assault or theorize that the visitation restriction imposed was related to the assault, was insufficient to put prison officials on notice that staff conduct contributed to the assault).

For the same reasons, plaintiff's motion for immediate placement in segregated housing (docket number 31) cannot be granted. He seeks segregated housing because his incontinence allegedly makes other inmates want to attack him. He has not raised this problem in administrative grievances, however. He must his exhaust this claim by alerting prison officials to his safety concerns and giving them the opportunity to address the dangers to him before relief on such a claim can be obtained in federal court.

Plaintiff's grievance did exhaust his other two claims, however. The fact that it did not mention the Eighth Amendment or the Equal Protection theory does not mean that it did not exhaust his claims. *See ibid.* The grievance described plaintiff's medical condition and requested single cell status, medical attention, hazardous waste bags, extra laundry, clothing and bed sheets. Under *Grimaldi*, this was sufficient to exhaust plaintiff's medical care claim because it "alerted" prison officials to his medical issues and to his claim that he needed single-cell status to accommodate those medical needs. The grievance also sufficiently exhausted his equal protection claim. Plaintiff claims that he was denied equal protection because he did not get a single cell, whereas an inmate in his shoes with mental illness would have. The grievance set forth "alerted" prison officials to the problem that he claims caused the equal protection violation, namely the denial of single-cell status. As such, it was sufficient to exhaust his equal

9

protection claim.

Defendants argue that in order to exhaust his claims against Wall and Walker, plaintiff had to pursue a second round of administrative grievances claiming that they improperly denied his administrative grievances. Plaintiff's claims are not that they violated his rights by denying his administrative grievances, per se, but rather by denying him a single cell, which they accomplished when they denied his grievances. Defendants' argument, if accepted in this case, would mean that prisoners would have to pursue multiple rounds of grievances challenging the denial of rounds of grievances. This is an unduly burdensome expansion of the exhaustion requirement. A second round of grievances challenging the denial of plaintiff's prior grievances is not necessary to exhaust his claims against Walker and Wall.

### b. Failure to State a Cognizable Claim

Defendants argue that plaintiff's claims against Wall and Walker do not state a cognizable basis for relief. This argument need not be addressed with respect to Plaintiff's claim that they failed to protect him from dangerous inmates because that claim is being dismissed for lack of exhaustion. For the reasons discussed below, defendants argument that plaintiff has failed to state cognizable medical and equal protection claims is rejected.

#### i. Medical Claim

Plaintiff claims that defendants violated his Eighth Amendment right to adequate medical care by denying his requests for single-cell status. Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (en banc). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

1    When liberally construed and accepted as true, plaintiff's allegations that he suffers
2 from a condition that renders him incontinent when he sleeps can be considered a "serious"
3 medical condition insofar as it significantly affects his daily activities and a reasonable doctor
4 would find it worthy of treatment. Defendants argue that plaintiff's allegations do not amount
5 to deliberate indifference on their part because he received medical appointments, an x-ray and
6 MRI for his back, physical therapy, and extra clothing, bedding, and laundry services.
7 Defendants Wall and Walker denied plaintiff's Plaintiff alleges, however, that two doctors, Dr.
8 Muhammad and Dr. Bridgne told him that single-cell status was medically required (Amend.
9 Compl. 6-7). These allegations must be accepted as true at this stage. If single-cell status was
10 medically necessary for plaintiff's condition, then defendants Walker and Wall's denial of his
11 requests for single-cell status could, when liberally construed, amount to deliberate indifference
12 to his medical condition. Consequently, plaintiff's amended complaint, when liberally
13 construed, states a cognizable claim that defendants Walker and Wall were deliberately
14 indifferent to his serious medical needs in violation of the Eighth Amendment.

ii.     Equal Protection

Plaintiff claims that defendants violated his right to equal protection because they did not provide him with single cell status when they would have done so if his condition arose out of a mental disorder. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Plaintiff alleges that he is being treated differently than "similarly situated" mentally ill prisoners who urinate or soil on themselves, and who, under prison regulations may be deemed "gravely disabled" and thereby obtain single-cell status. Of course, defendants may have evidence that this is not the case because, for example, "gravely disabled" prisoners under the regulations do not necessarily receive single cells, or that incontinence without other problems arising from mental illness does not give the prisoner single-cell status. Such evidence, if it exists, cannot be considered at this stage, however.

Defendants argue that the claim is not cognizable because plaintiff has not alleged that defendants conduct was the result of "purposeful or invidious discrimination." When challenging his treatment with regard to other prisoners on equal protection grounds, a prisoner must allege that his treatment is invidiously dissimilar to that received by other inmates. *More v. Farrier*, 984 F.2d 269, 271-72 (8th Cir. 1993) (absent evidence of invidious discrimination, federal courts should defer to judgment of prison officials). The attachments to the amended complaint indicate that defendants denied his request to be classified as "gravely disabled" and receive a single cell on such grounds because his incontinence was based upon a physical condition and not a mental condition. When liberally construed and accepted as true, such facts could be viewed as evidence that defendants intended to treat him differently than mentally ill inmates and that such disparate treatment was invidious or unfair.

Defendants also argue that plaintiff has not shown that he is a member of a suspect class or that the regulation lacked a rational basis. Due to the need for judicial deference to the problems of prison administration, a prison regulation or practice that impinges on inmates' constitutional rights is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. at 89. Four factors are used to make this determination:

> (1) Whether there is a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it. A regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational, and the government objective must be a legitimate and neutral one.
>
> (2) Whether there are alternative means of exercising the right that remains open. If so, courts should be particularly conscious of the measure of judicial deference owed to corrections officials.
>
> (3) What impact the accommodation of the asserted right will have on guards, other inmates and the allocation of prison resources generally. If the accommodation will have a significant ripple effect the courts should be particularly deferential to the informed discretion of correctional officials.
>
> (4) If there is an absence of ready alternatives, this is evidence of the reasonableness of a prison regulation.

*Id.* at 89-91. These factors, including the existence of a legitimate government interest in and ready alternatives to the regulation, and the impact of the asserted right on other inmates and guards, cannot be determined at this stage when evidence outside the amended complaint and

12

1 its attachments cannot be considered. Based solely on a liberal construction of the amended
2 complaint, it is possible that no a rational basis for treating plaintiff differently from similarly
3 situated mentally ill inmates (assuming that he is indeed similarly situated). Accordingly, this
4 claim will not be dismissed for lacking a cognizable basis for relief.

      iii.  Qualified Immunity

6   Defendants argue that Wall and Walker are entitled to qualified immunity. They base
7 this argument solely on the conclusory assertion that it would not have been clear to them that
8 they violated plaintiff's rights by denying his grievances. When liberally construing the
9 allegations in the complaint, it is possible that Walker and Wall denied his request for single
10 cell status despite it's being medically required for plaintiff condition, and that they invidiously
11 treated him differently from similarly situated mentally ill prisoners for no rational reason.
12 Defendants do not show why, if this was the case, it would not have been clear to Walker and
13 Wall that they were violating plaintiff's rights. Their qualified immunity argument is without
14 merit.

**C.**  **UNSERVED DEFENDANTS**

16   Defendant J. Walker denied plaintiff's administrative grievance in which he asked for
17 single-cell status at the Director's level of review. It is undisputed that a different "J. Walker"
18 was inadvertently served with the summons and complaint, and that she is a Registered Nurse at
19 SVSP who has no involvement in the case. Accordingly, the claims against the J. Walker, R.N,
20 who was served in this case will be dismissed. The "J. Walker" who is named as a defendant in
21 this case is a former Chief of California Health Care Services of the CDCR's Office of Third
22 Level Appeals for Health Care. This "J. Walker" has not been served. Defendant Dr. D. Jardini
23 also could not be served because when the Marshal attempted service at SVSP, where plaintiff
24 indicated Dr. Jardini was employed, the Marshal was informed that nobody by that name is
25 employed there. Plaintiff will have to effectuate service upon these unserved defendants, or
26 provide the court with sufficient information to locate and serve them, within **28 days** of the
27 date this order is filed, or show cause why he cannot, or the claims against them will be
28 dismissed without prejudice. *See* Fed. R. Civ. P. 4(m).

13

**CONCLUSION**

1. Defendants' motion to dismiss (docket number 33) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claims against Registered Nurse J. Walker at SVSP (who was incorrectly served and is not a defendant) are **DISMISSED**. Plaintiff's claims against defendants Cate, Hedgpeth, and Sepulveda are **DISMISSED** without prejudice. Plaintiff's claims against the remaining defendants for failing to protect him from danger at the hands of other inmates are **DISMISSED** without prejudice. Plaintiff's medical and equal protection claims against defendants Wall, Walker and Jardini are not dismissed.

2. Plaintiff will have to effectuate service upon the two unserved defendants, or provide the court with sufficient information to locate and serve them, or show cause why he cannot, within **28 days** of the date this order is filed. His failure to do so will result in the dismissal of the claims against them without prejudice. *See* Fed. R. Civ. P. 4(m).

3. In order to expedite the resolution of this case, the court orders as follows:

   a. No later than ninety-one days from the date this order is filed, defendants shall file a motion for summary judgment. If defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the court prior to the date the summary judgment motion is due. All papers filed with the court shall be promptly served on the plaintiff. Defendants shall also submit proof that they have served plaintiff at the time of their motion a copy of the attached "NOTICE -- WARNING." Failure to do so will result in denial of the summary judgment motion. *See Woods v. Carey*, No. 09-15548, slip op. 7871 (9th Cir. July 6, 2012).

   b. Plaintiff's opposition to the dispositive motion, if any, shall be filed with the court and served upon defendants no later than thirty days from the date the motion is filed. Plaintiff must read the attached page headed "NOTICE -- WARNING," which is provided to him pursuant to *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th Cir. 1998) (en banc), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

   c. Defendants **shall** file a reply brief no later than fifteen days after the date the opposition is filed.

14

      d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the court so orders at a later date.

    4. All communications by the plaintiff with the court must be served on defendant, or defendant's counsel once counsel has been designated, by mailing a true copy of the document to defendant or defendant's counsel.

    5. Discovery may continue to be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is required before the parties may conduct discovery.

    6. It is the plaintiff's responsibility to prosecute this case. Plaintiff must keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

    7. The parties' motions for extensions of time (docket numbers 41, 38) are **GRANTED**. Plaintiff's motion to be housed elsewhere (docket numbers 31) is **DENIED.** His motions to compel a response to that motion (docket number 37) and his motion to authenticate documents (docket number 51) are **DENIED** as unnecessary.

    IT IS SO ORDERED.

Dated: August   24  , 2012.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\CR.10\GAY1314.MTD.wpd

NOTICE -- WARNING

(SUMMARY JUDGMENT)

If defendants move for summary judgment, they are seeking to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.

Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact--that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.